# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-1771V
UNPUBLISHED

| | |
|---|---|
| KRISTI A. BAKER,<br><br>　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: October 9, 2020<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Site of Vaccination<br>Influenza (Flu) Vaccine; Shoulder<br>Injury Related to Vaccine<br>Administration (SIRVA) |

*Simina Vourlis*, Law Offices of Simina Vourlis, Columbus, OH, for petitioner.

*Lynn Christina Schlie*, U.S. Department of Justice, Washington, DC, for respondent.

### **FACT RULING**[1]

On November 18, 2019, Kristi A. Baker filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered right shoulder injuries related to vaccination ("SIRVA") pursuant to the Vaccine Injury Table, or caused in fact by an influenza ("flu") vaccine administered on November 23, 2017. Petition at 1, 7. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

For the reasons discussed below, I find that the flu vaccine Petitioner received on November 23, 2017, was more likely than not administered in her right shoulder.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.     Relevant Procedural History

Ms. Baker filed her petition on November 18, 2019. On November 19, 2019, Petitioner filed Exhibits 1-11 and a Statement of Completion (ECF Nos. 5-11). The case went through the pre-assignment review process and was thereafter assigned to the SPU on November 26, 2019 (ECF No. 13).

The initial status conference was held on March 2, 2020 (ECF No. 16). On March 24, 2020, Petitioner filed additional medical records as Exhibit 12 (ECF No. 17). On April 28, 2020, Ms. Baker filed a status report (ECF No. 18) and Statement of Completion (ECF No. 19).

On May 15, 2020, Respondent filed a status report (ECF. No. 20) noting that he had not identified missing medical records or medical issues beyond what is normally addressed in the SPU. However, counsel identified an issue that may require additional development or support: the record established that Petitioner received a flu vaccine on November 23, 2017, but did not indicate *which arm* was the site of vaccine administration.

A telephonic status conference was held on June 4, 2020 to discuss how to resolve the issue of the vaccination situs (ECF No. 21). Petitioner's counsel stated that she thought the record contained sufficient evidence to support her contention that she received the vaccine in her right arm. Respondent's counsel noted that an affidavit from the person who administered the vaccine could be helpful. Petitioner agreed to look into whether any additional evidence was available. Neither party objected to the possibility of a ruling on the written record concerning the vaccination site after Petitioner filed either additional evidence or a status report.

On August 6, 2020, Petitioner filed a status report stating that she did not intend to file additional evidence concerning the site of vaccine administration (ECF No. 24). Rather, she cited medical records relevant to the vaccination situs, and noted that her affidavit provided further explanation. Petitioner reported that a letter was sent to the nurse who administered the November 23, 2017 vaccine, but no response was received and the letter was not returned undelivered. Attached to Petitioner's August 6, 2020 status report is a letter dated June 29, 2020 from Petitioner's counsel to the nurse identified in the status report requesting the nurse to respond concerning the vaccination site (ECF No. 24 at 4). This issue is now ripe for resolution.

## II.    Issue

At issue is whether Petitioner received the vaccination alleged as causal in her right arm. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination).

2

### III.     Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record.  Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs*., 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs*., No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs*., 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special

master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.   Finding of Fact

Based upon a review of the entire record, I find that Petitioner's November 23, 2017 flu vaccine was likely administered in her right arm, as she contends. I make this finding after a complete review of the record to include all medical records, affidavits, and additional evidence filed.  Specifically, I base my finding on the following evidence:

- Exs. 1 at 1 and 3 at 615, 709 document that an intramuscular flu vaccine was administered to Petitioner on the morning of November 23, 2017, although they do not establish the situs of vaccine administration;

- Ex. 4 at 25, a record of a December 13, 2017 appointment with Nurse Practitioner Tonnette Hoffman for right shoulder pain notes that Petitioner reported that she "was being discharged from the hospital on Thanksgiving day and was given a flu vaccine. She said the shot was given [too] high in her right arm and has hurt ever since";

- Ex. 5 at 1, a record of a December 19, 2017 appointment with orthopedist Dr. Stanley Tao for right shoulder pain, noting "acute onset (11/23/17) pt states started after receiving flu shot . . . pt state[s] flu shot was given exceptionally high region of arm and did hurt worse than usual" and noting an onset date of 11/23/17. This record also documents that Petitioner's dominant hand is her left hand. *Id*;

- Ex. 5 at 28, a Scott Orthopedic Center Injury form dated December 19, 2017 and signed by Petitioner reporting that the injury happened to her right shoulder on November 23, 2017, at approximately 10 am and explaining that she "[r]eceived flu shot too high on shoulder";

- Ex. 6 at 2, a January 3, 2018 physical therapy initial evaluation noting a date of onset/injury of November 23, 2017 and "a six week history of right shoulder pain that she conveys began after a flu shot on 11/23/17";

- Ex. 3 at 339, a record of a February 28, 2018 appointment with radiation oncologist Dr. Sanjeev Sharma noting that Petitioner had "a little bit of limited range of motion with her right arm; this has occurred after she had her flu shot. She has been diagnosed with a frozen shoulder and she attributes it more to the flu shot";

- Ex. 3 at 340, a record of a May 7, 2018 appointment with Dr. Sharma noting that Petitioner had undergone arthroscopic surgery of her right shoulder due to a partial tear of a rotator cuff tendon secondary to a flu vaccine received while she was hospitalized:

4

- Ex. 9 at 1, a January 11, 2019 letter from Sally B. Oxley of HPT Physical Therapy Specialists, documenting a January 11, 2019 evaluation of Petitioner's functional abilities and noting that Petitioner reported right shoulder pain associated with a November 23, 2017 flu vaccine. This record also confirms that Petitioner "is left hand dominant." Ex. 9 at 3;

The above-referenced evidence supports a finding that Petitioner's November 23, 2017 vaccination was likely administered in her right shoulder. In seeking care for her right shoulder injury (beginning less than a month from the date of administration), Petitioner reported that the vaccine had been administered in her right arm. Thereafter, she consistently related her right shoulder injury to the November 23, 2017 flu vaccine. Accordingly, there is record support for her contention about the situs of administration, beyond her own allegations. In addition, Ms. Baker has provided a logical explanation for why the vaccine would have been administered in her right arm, since her affidavit asserts that she wanted it administered in her "non-dominant right arm." Ex. 2 at ¶¶ 3-7. This explanation is consistent with the medical records documenting that Petitioner is left hand dominant. Thus, while there may not be a record from the date of administration that conclusively establishes the issue in Petitioner's favor, sufficient preponderant evidence supports her favored conclusion.

I therefore find it more likely than not that the vaccination alleged as causal in this case was administered to Petitioner in the right shoulder on November 23, 2017.

### V.     Scheduling Order

The issue of the vaccination site is the only issued Respondent's counsel identified as requiring additional development. Petitioner shall thus proceed with preparing a demand, with supporting documentation, for Respondent's consideration. This should include lost wage documentation if Petitioner seeks damages for lost wages. I understand that Respondent cannot provide a response to this demand until he has obtained formally his client's position.[3] However, the parties should strive to be in a position to immediately discuss damages once Respondent indicates he is amenable to consideration of Petitioner's demand after Respondent's review is complete. In addition, it is sensible for Petitioner to calculate her likely damages as quickly as possible in any case pending in SPU.

**Accordingly:**

- **Petitioner shall file, by no later than <u>Wednesday, December 02, 2020</u>, a status report providing the following information:**

---

[3] If Respondent's position on this case remains undetermined subsequent to the provision of a demand by Petitioner's counsel, I will nonetheless direct Respondent's counsel to provide Respondent with a copy of the demand and to file a Status Report confirming provision of Petitioner's demand to Respondent.

- o **Whether and when Petitioner provided a demand for damages with supporting documentation to Respondent's counsel;**
- o **Whether there is a Medicaid lien in this case and, if so, when Petitioner anticipates providing documentation of the lien to Respondent;**
- o **Petitioner's current treatment status and condition;**
- o **Whether all updated medical records have been filed; and**
- o **A list of each component of damages allegedly suffered by Petitioner.**

- **Respondent shall file a status report indicating how he intends to proceed in this case by <u>Wednesday, January 06, 2021</u>.** At a minimum, the status report shall indicate whether he is willing to engage in tentative discussions regarding settlement or proffer, is opposed to negotiating at this time, or that the Secretary has not yet determined his position. In the event Respondent wishes to file a Rule 4(c) report, he may propose a date for filing it, but shall indicate his position on entering into negotiations regardless of whether he wishes to file a Rule 4(c) report.

Any questions about this order or about this case may be directed to OSM staff attorney **Eileen Vachher at (202) 357-6388 or Eileen_Vachher@cfc.uscourts.gov.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master